**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ADVANCED ORTHOPEDICS AND : 
SPORTS MEDICINE, :
 :
        Plaintiff, :
 : Civ. Action No.: 14-7280(FLW)(LHG)
      v. :
 : **OPINION**
BLUE CROSS BLUE SHIELD OF :
MASSACHUSETTS, :
 :
        Defendant. :
_____ :

**WOLFSON, United States District Judge:**

     Currently before the Court is Defendant Blue Cross Blue Shield of Massachusetts' ("Defendant") Motion to Dismiss the five-count Complaint filed by Plaintiff Advanced Orthopedics and Sports Medicine ("Plaintiff"), a healthcare provider, for monies owed to Plaintiff based upon Plaintiff furnishing medical care to patient Michael P., ("Beneficiary"), an insured under an employee health insurance plan (the "Plan" or "Policy") administered by Defendant. The Complaint asserts the following claims: (Count 1) state-law breach of contract; (Count 2) failure to make payments pursuant to 29 U.S.C. § 1132(a)(1)(B) (ERISA); (Count 3) failure to provide necessary documentation under 29 U.S.C. §§ 1132(a)(1)(A) and (c); (Count 4) breach of fiduciary duty and co-fiduciary duty under 29 U.S.C. §§ 1132(a), 1104(a), and 1105(a); and (Count 5) failure to establish/maintain reasonable claims procedures under 29 C.F.R. § 2560.503-1. Defendant moves to dismiss Plaintiff's Complaint in its entirety, on the basis that Plaintiff lacks standing to sue under ERISA. Defendant additionally moves on separate

1

bases to dismiss the following individual counts: Count 1, on the basis that the claim is preempted; Count 3, on the basis that Defendant is not the Plan Administrator; Count 4, on the basis that the count does not state a claim for appropriate equitable relief; and Count 5, as duplicative of Count 2, and for failure to state a claim. Plaintiff has agreed to voluntarily dismiss Count 1 and to withdraw its jury demand. Plaintiff also moves to amend the Complaint.

For the reasons expressed herein, Defendant's Motion to Dismiss for lack of standing is granted, and the Complaint is dismissed in its entirety. As a result, the Court will not address the remaining claims. I also find that amendment of the Complaint would be futile, and so deny Plaintiff's Motion to Amend.

## I.     Factual and Procedural History

Plaintiff initially filed this suit in the Superior Court of New Jersey, Law Division, Monmouth County, and Defendant subsequently removed the case to his Court on November 21, 2014. [Docket Entry No. 1].  On December 11, 2014, Defendant filed the present Motion to Dismiss pursuant to Fed R. Civ. P. 12(b)(6). [Docket Entry No. 5].  Plaintiff opposed the motion, and moves to amend the complaint. Plaintiff also attached a proposed amended complaint ("Am. Compl."). [Docket Entry No. 7].  Defendant filed a reply brief ("Defendant's Reply Brief") opposing Plaintiff's Motion to Amend and in further support of the Motion to Dismiss. [Docket Entry No. 8].

On a Rule 12(b)(6) motion, the Court recounts relevant facts from the Complaint and these facts are taken as true. At the outset, I note that because the revised pleadings in the Proposed Amended Complaint do not change the outcome of this case, I will consider the

allegations pled in the Proposed Amended Complaint ("Am. Compl.") for purposes of this motion.

Michael P.[1] is an insured under a policy administered by Defendant. Am. Compl. ¶¶2, 6. On January 9, 2013, Plaintiff provided medical services to the Michael P., and obtained from him an assignment of benefits. *Id.* ¶¶7–8; *see* Ex. A (assignment of benefits form). Thereafter, based on the assignment, Plaintiff submitted a claim to Defendant requesting payment in the amount of $111,216.00 for services rendered; Defendant, however, sent Plaintiff only a partial payment in the amount of $5,798.01. *Id.* ¶¶9–10.

Unsatisfied with the payment received, Plaintiff appealed the decision through the administrative appeals process under the Policy by sending notice of first appeal via letter dated February 18, 2013. *Id.* ¶11; *see* Ex. D (first appeal letter). After Defendant failed to respond to the initial appeal, Plaintiff filed a second appeal through a letter from counsel dated May 13, 2013, requesting, among other items, "a true and exact copy of the applicable Health Insurance Policy, Summary Plan Description. . . ." *Id.* ¶12; Ex. E (second appeal letter). Again, Plaintiff did not receive a response. *Id.* ¶13.

After exhausting the available administrative appeals options, Plaintiff filed the instant suit to recover the outstanding balance of $105,462.99. *Id.* ¶¶14–15.

The Proposed Amended Complaint asserts four claims:[2]

- Count One—Failure to Make All Payments Pursuant to Member's Plan Under 29 U.S.C. § 1132(a)(1)(B);
- Count Two—Failure to Provide All Necessary Documentation Under 29 U.S.C. § 1132(a)(1)(A) and 29 U.S.C. § 1132(c);

---

[1] The beneficiary's name is anonymized in the Amended Complaint to avoid unnecessary disclosure of patient health information.

[2] The original Complaint contained a count for breach of contract. Because Plaintiff has agreed to voluntarily dismiss this count, it will not be addressed.

- Count Three—Breach of Fiduciary Duty and Co-Fiduciary Duty Under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a); and
- Count Four—Failure to Establish/Maintain Reasonable Claims Procedures under 29 C.F.R. 2560.501–1.

Blue Cross Blue Shield of Massachusetts is the only named defendant in the original Complaint; the Proposed Amended Complaint adds A.W. Chesterton Company, "the employer that provides or administers health care benefits," as a defendant. *Id.* at ¶2. Plaintiff also includes fictitious Defendant ABC Benefit Plans 1–10, but it has not substituted the unnamed defendants. *Id.* In the present matter, Defendant Blue Cross Blue Shield of Massachusetts moves to dismiss the entire Complaint based on standing, and moves to dismiss certain individual counts.

## II. Discussion

### A. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the Rule 12(b)(6) standard, noting that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating . . . [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element." *Phillips*, 515 F.3d at

4

234 (quoting *Twombly*, 127 U.S. at 1964); *see Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly*'s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n. 6 (3d Cir. 2010) *cert. denied*, 132 S. Ct. 98 (2011) (citation and internal quotation marks omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *Id*. at 98. That said, the Rule 8 pleading standard is applied "with the same level of rigor in all civil actions." *Id*. (quoting *Iqbal*, 556 U.S. at 684).

**B. Standing under ERISA**

Defendant maintains that dismissal is required as Plaintiff lacks standing under ERISA. Standing under ERISA is governed by 29 U.S.C. § 1132. The statute specifically limits the type of person allowed to bring a civil action under ERISA to plan participants or beneficiaries. 29 U.S.C. § 1132(a)(1)(B); *Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). Plaintiff does not argue that it is either a plan participant or beneficiary, but, rather, asserts that it satisfies the standing requirement by way of a valid assignment of benefits provided to it by a plan participant and beneficiary. Although the Third Circuit has recognized that assignments in the ERISA context are permissible, *see CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n. 10 (3d Cir. 2014), Plaintiff's claim fails because the Plan contains a valid anti-assignment clause that forbids the type of assignment present in this case.

### i. Anti-Assignment Clause

The Plan's anti-assignment clause states:

> "You cannot assign any benefit or monies due from this health plan to any person, corporation, or other organization without Blue Cross and Blue Shield's written consent. Any assignment by you will be void. Assignment means the transfer of your rights to the benefits provided by this health plan to another person or organization."

[Def. Br. Ex. 2 ("Excerpt of Benefits Description"), Assignment of Benefits.]

Defendant asserts that this Court has found that anti-assignment clauses in ERISA plans are enforceable, and that, accordingly, Plaintiff's assignment is void. Def. Br. at 5–6. Thus, Defendant argues, Plaintiff cannot establish standing under ERISA.

As an initial matter, I note that courts routinely enforce anti-assignment clauses contained in ERISA-governed welfare plans. In 2005, and again in 2011, this Court explained:

> Although the Third Circuit has not addressed the issue of anti-assignability clauses, a number of federal and state courts have found that unambiguous

6

anti-assignment provisions in group health care plans are valid. *See*, *e.g.*, *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294–96 (11th Cir. 2004) ("Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1464–65 (10th Cir. 1995) ("ERISA's silence on the issue of the assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions."); *Wash. Hosp. Ctr. Corp. v. Group Hospitalization and Med. Servs., Inc.*, 758 F. Supp. 750, 755 (D.D.C. 1991) (holding that an anti-assignment provision was valid and enforceable after concluding that enforcement of the provision was not contrary to public policy); *Renfrew Ctr. v. Blue Cross & Blue Shield*, 1997 U.S. Dist. LEXIS 5088, 1997 WL 204309, *3 (N.D.N.Y. 1997) ("anti-assignment clauses play an important role in constraining the costs of health care"); *Somerset Orthopedic Assocs. v. Horizon Blue Cross and Blue Cross and Blue Shield of N.J.*, 345 N.J. Super. 410, 785 A.2d 457, 465 (N.J. App. Div. 2001) (finding that "such subscriber assignment are void as contrary to public policy" and holding that "the anti-assignment clause in Horizon's subscriber contracts is valid and enforceable to prevent assignment by subscribers of policy benefit payments to non-participating medical providers without Horizon's consent"). This Court finds the caselaw supporting the enforceability of anti-assignment provisions in health benefit plans persuasive.

[*Cohen v. Independence Blue Cross*, 820 F. Supp. 2d 594, 605 (D.N.J. 2011) (quoting *Briglia v. Horizon Healthcare Servs.,* 2005 U.S. Dist. LEXIS 18708, *12–14, 2005 WL 1140687 (D.N.J. May 13, 2005)).

Notwithstanding the weight of authority[3] finding that anti-assignment clauses in ERISA plans are generally enforceable, Plaintiff argues that the assignment of benefits in this case is

---

[3] In the years since *Cohen*, this precedent has repeatedly been followed in this District. *See, e.g., Specialty Surgery of Middletown v. Aetna*, No. 12-4429, 2014 U.S. Dist. LEXIS 85371, 2014 WL 2861311 at *4 (D.N.J. June 24, 2014); *Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J.*, No. 08-6160 JAG, 2009 U.S. Dist. LEXIS 90600, 2009 WL 3233427

7

valid for several reasons. First, Plaintiff argues that the assignment of benefits to Plaintiff contained the appropriate language to make the assignment valid. Pl. Opp. at 6–7. I need not address this argument, however, because Defendant does not challenge this point. Rather, Defendant asserts that the anti-assignment clause makes any assignment void.

Plaintiff next asserts that, under New Jersey law and as a matter of public policy, anti-assignment clauses should not be enforceable in the context of health insurance plans. Pl. Opp. at 8. Plaintiff cites to N.J.S.A. 26:2S–6.1 for the proposition that "the purported anti-assignment clause is entirely void against New Jersey public policy." *Id.* Furthermore, Plaintiff argues that there are "strong policy concerns against the absolute enforcement of anti-assignment clauses." Pl. Opp. at 9.

N.J.S.A. 26:2S–6.1, inasmuch as it discusses assignment, provides:

> With respect to a carrier which offers a managed care plan that provides for both in-network and out-of-network benefits, in the event that the covered person assigns, through an assignment of benefits, his right to receive reimbursement for medically necessary health care services to an out-of-network health care provider, the carrier shall remit payment for the reimbursement directly to the health care provider. . . .
>
> [N.J.S.A. 26:2S-6.1(c).]

Plaintiff asserts that, under this statute, "New Jersey requires carriers who offer out-of-network benefits to honor an assignment of benefits and make payment directly to providers" and therefore, according to Plaintiff, the anti-assignment clause is "void . . . since it prohibits payment directly to the provider." Pl. Br. at 8.

---

at *4 (D.N.J. Sept. 30, 2009); *Menkowitz v. Blue Cross Blue Shield of Ill.*, 2014 U.S. Dist. LEXIS 151232, *7–8 (D.N.J. Oct. 23, 2014).

Defendant asserts[4] that the New Jersey statute "does not require carriers to honor an assignment of ERISA benefits, but merely requires that 'in the event' of an assignment, payment be made" in a certain manner. *Id.* at 4. Defendant also notes that the anti-assignment provision "does not prohibit direct payment to the provider, but only the assignment of rights and benefits." *Id.*

I disagree with Plaintiff's interpretation of the statute.[5] On its face, this statute merely regulates the method of payment when an assignment of benefits occurs. It does not address the question of whether an anti-assignment clause is enforceable. More specifically, the statute does not address the question at issue here: whether an anti-assignment clause in an ERISA plan will prevent a provider from acquiring standing to pursue a lawsuit under the ERISA statute.[6]

---

[4] Defendant additionally argues that "New Jersey State law and policy do not apply in this case," and that to the extent state law is applicable, Massachusetts state law governs. Def. Repl. at 3. Having found that the New Jersey statute is not applicable to the facts here, *see infra*, I need not, at this time, address the choice-of-law issue raised by Defendant in this context.

[5] The sole case interpreting this statute, which was amended to include the relevant provision in 2011, is *N.J. Dental Ass'n v. Horizon Blue Cross Blue Shield of N.J.*, 2011 N.J. Super. Unpub. LEXIS 3076, *1 (App. Div. Dec. 20, 2011). In the context of a dental benefits plan, that case rejected an argument similar to Plaintiff's argument here—namely, that in passing this statute, the N.J. Legislature "expressed its approval of assignment of health care benefits and, thus, rendered invalid anti-assignment clauses." *Id.* at *1. However, that case rejected the argument on the basis that a different statute, N.J.S.A.17:48E-10.2, which applies specifically to the payment of dental benefits, "permits enforcement of anti-assignment clauses." *Id.* at *8. As there is no similar statute applicable to this case, this case does not apply.

[6] Moreover, to the extent that this statute prohibits anti-assignment clauses, it is likely preempted by ERISA. *See St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kansas, Inc.*, 49 F.3d 1460, 1464 (10th Cir. 1995) ("We conclude that ERISA preempts state law on the issue of the assignability of benefits."); *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1351 (8th Cir. 1991) (holding that state "assignment statute 'relates to' ERISA plans" and may therefore be preempted).

Plaintiff additionally asserts that "there are strong policy concerns against the absolute enforcement of anti-assignment clauses," and cites to two related Fifth Circuit cases: *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992) ("Hermann I") and *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286 (5th Cir. 1986) ("Hermann II"). However, as has already been stated, courts in this District have repeatedly upheld anti-assignment provisions in ERISA contracts against providers, *see Cohen*, 820 F. Supp. at 605 (citing cases). Indeed, even the Fifth Circuit, in a more recent case, has held that anti-assignment clauses may be considered valid, and stated that "neither *Hermann I* nor *Hermann II* stands for the proposition that all anti-assignment clauses are *per se* invalid vis-à-vis providers of health care services." *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352 (5th Cir. 2002). In sum, I find no reason to abandon the holding in *Cohen* and *Briglia*—that unambiguous anti-assignment clauses in the ERISA context are valid.

Finally, the Court notes that Plaintiff does not contend that the clause is ambiguous, and it is not. Accordingly, the Court finds the anti-assignment clause to be valid on its face.

   ii.   Waiver

In the alternative, Plaintiff, relying on New Jersey state law, argues that Defendant has waived its right to enforce the anti-assignment provision through a continued course of conduct and dealings. Pl. Opp. at 10. Plaintiff argues that, because Defendant made a direct payment to Plaintiff, Defendant cannot invoke the anti-assignment clause to invalidate Plaintiff's standing. *Id.* at 11. Worded differently, Plaintiff argues that the conduct—sending a payment despite the existence of an enforceable anti-assignment clause—establishes a course of conduct amounting to a waiver. *Id.*

In addition to the waiver-by-payment argument above, Plaintiff suggests that a course of conduct may be inferred from Defendant's inaction in this matter. *Id.* Because Plaintiff submitted two appeals along with a request for documents, to which Defendant did not respond, Plaintiff maintains that Defendant has waived its right to invoke the anti-assignment clause in this case. *Id.*

Defendant asserts that Plaintiff has not presented facts showing a waiver. Def. Repl. at 4–5. Initially, Defendant contends that the choice of law provision in the Plan provides that the applicable law is Massachusetts state law. *Id.* at 8. This provision provides: "This contract, including this benefit booklet and any applicable riders, will be governed by and construed according to the laws of the Commonwealth of Massachusetts, except as preempted by federal law." Def. Repl. Ex. 1 (hereinafter "2d Plan Excerpts"), Welcome. Defendant then argues that direct payment is insufficient to show waiver. Def. Repl. at 5–8.

Notwithstanding the parties' disagreement as to which law controls, the Court notes the striking similarity between New Jersey and Massachusetts waiver law.[7] In conducting the analysis under the precedent of either jurisdiction, the result is the same—Plaintiff has failed to establish that a waiver has occurred.

Under both Massachusetts and New Jersey law, waiver is defined as "an intentional relinquishment of a known right." *Roseman v. Day*, 185 N.E.2d 650 (Mass. 1962); *accord Knorr*

---

[7] Usually, as an initial matter, the Court would have to conduct a choice of law analysis. Normally, in a diversity case, a federal court applies the choice-of-law rules of the jurisdiction in which it sits. *See Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 2011 U.S. App. LEXIS 18623, 2011 WL 3930285, *3 (3d Cir. 2011). However, because this case arises out of ERISA, a federal statute, that rule does not apply. *Cohen v. Independence Blue Cross*, 820 F. Supp. 2d 594, 601 (D.N.J. 2011). Here, because Massachusetts and New Jersey law is similar in language and in outcome, there is no conflict and Court need not conduct such an analysis.

*v. Smeal*, 178 N.J. 169, 177 (2003). "Waiver may occur by an express and affirmative act, or may be inferred by a party's conduct, where the conduct is consistent with and indicative of an intent to relinquish voluntarily a particular right." KACT, Inc. v. Rubin, 62 Mass. App. Ct. 689, 695 (2004); *accord Knorr*, 178 N.J. at 177 ("The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it"). Such words or acts however, must show a "clear, decisive, and unequivocal" waiver. *Dunkin' Donuts Inc. v. Panagakos*, 5 F. Supp. 2d 57, 60 (D. Mass. 1998); *see also Deerhurst Estates v. Meadow Homes, Inc.*, 64 N.J. Super. 134, 145 (App. Div. 1960), *certif. denied*, 34 N.J. 66 (N.J. 1961) (waiver requires "a voluntary, clear and decisive act, implying an election to forego some advantage which the waiving party might have insisted on."). "The burden of proving waiver devolves upon the party asserting it." *Panagakos*, 5 F. Supp. at 61; *see Cacon, Inc. v. Rand Envtl. Servs.*, 2006 N.J. Super. Unpub. LEXIS 1460, *8, 2006 WL 2389553 (App. Div. Aug. 21, 2006).

Plaintiff asserts that Defendants implicitly waived the anti-assignment clause by sending a direct payment to Plaintiff. Pl. Opp. at 11. However, federal courts in New Jersey and other jurisdictions have held, under various state laws, that sending a direct payment alone does not constitute waiver of an anti-assignment provision, at least where the plan authorizes direct payment. *See, e.g.*, *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, Civ. No. 06-0462, 2007 WL 4570323, at *4 (D.N.J. Dec. 26, 2007) ("Horizon's direct payments to GSS would not constitute a waiver if authorized under the Horizon plans at issue."); *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, Civ. No. 09-5619, 2011 WL 6819081, at *6 (N.D. Ill. Dec. 28, 2011) ("there is law supporting the proposition that direct payment to a provider does not waive reliance on a plan's anti-assignment provision if the

plan also authorizes direct payment"); *Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, No. 11-80799-CV, 2012 WL 993097, at *2 (S.D. Fla. Mar. 22, 2012) ("Defendant would have had no occasion to assert the anti-assignment clauses when Plaintiffs previously demand payment because the clauses specifically allow the right to payment for benefits to be assigned.").

Indeed, in a recent case involving the clause at issue here, the plaintiff argued that the defendant waived the anti-assignment provisions by providing direct payment to them. *MBody Minimally Invasive Surgery, P.C. v. Empire HealthChoice HMO, Inc.*, 2014 U.S. Dist. LEXIS 114012, *7–8 (S.D.N.Y. Aug. 15, 2014). The Southern District of New York found that this argument lacked merit, stating that, "health insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions." *Id.* (citing *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 355–56 (S.D.N.Y. 2013)). This Court agrees with the Southern District of New York's conclusion, and finds that the same conclusion is required under both New Jersey and Massachusetts law. Because the terms of the Plan permit direct payment to healthcare providers, *see* 2d Plan Excerpts, Part 9: Filing a Claim, a direct payment does not constitute a waiver of the anti-assignment clause.

In addition, Plaintiff contends that Defendant did not raise the anti-assignment clause in response to Plaintiff's appeals. Pl. Opp. at 11. I note, initially, that Defendant did not respond to Plaintiff's appeals in any way, *see* Am. Compl. ¶ 13, and "mere silence or inaction cannot give rise to either waiver or estoppel." *Cohen*, 820 F. Supp. 2d at 607. Moreover, in *Middlesex Surgery Ctr. v. Horizon*, 2013 U.S. Dist. LEXIS 27542, *13 (D.N.J. Feb. 28, 2013) (Chesler, J), a court within this District, construing New Jersey law, held that engaging with an assignee in a pre-suit claim process does not constitute a waiver of the anti-assignment clause. The court in *Middlesex* found that:

> "[T]here is nothing inconsistent about the Fund objecting to Plaintiff's ERISA standing after having engaged with [plaintiff] in a pre-suit claim review process. Whether Plaintiff had the right to submit a claim and pursue [an] appeal on [the beneficiaries] behalf[,] is a separate issue entirely from whether Plaintiff has the right to sue under § 502(a). In recognizing the former, Defendant has not acquiesced in the latter."
>
> [*Id.* at *13–14.*]

As New Jersey and Massachusetts law contain the same requirements to establish waiver, I find that the decision of the *Middlesex* court applies here as well.

In sum, I find that Plaintiff has not met its burden of alleging waiver. *See Odom*, 2002 U.S. Dist LEXIS 9944 at 22. All Plaintiff alleges is that Defendant made a payment for services rendered, and failed to provide the requested documents that it sought. This Court and other courts throughout the country have rejected the assertion that such conduct constitutes a waiver. *See MBody*, 2014 U.S. Dist. LEXIS 114012, at *7–8. Specifically, as this Court noted in *Cohen v. Independence Blue Cross*, 820 F. Supp. 2d 594, 607 (D.N.J. 2011), "even if [the] defendant had knowledge of the assignment, mere silence or inaction cannot give rise to either waiver or estoppel." *Id.* I find that this conduct does not constitute the clear, decisive, and unequivocal action necessary for an implied waiver. Thus, Plaintiff has not met its burden to sufficiently state a claim that Defendant waived the anti-assignment clause.

   iii.   **Estoppel**

In the alternative, Plaintiff alleges that Defendant should now be estopped from invoking the anti-assignment clause in challenging Plaintiff's ERISA standing. Relying on the Fifth Circuit's decision in *Herman II*, 959 F.2d 569, Plaintiff argues that Defendant's failure to assert the anti-assignment clause as a basis upon which to deny payment, thereby estops Defendant from asserting the clause now. Initially, I note that *Herman II* discusses estoppel in the context of

a payee failing to raise the anti-assignment clause in response to a payment request. *Id.* at 574. Here, Defendant issued payment. The narrow circumstances in *Herman*, therefore, are easily distinguishable from those presented here.

Moreover, Plaintiff has failed to assert the required elements of estoppel under Third Circuit precedent. The Third Circuit has instructed that, in order to succeed under a theory of equitable estoppel in the ERISA context, Plaintiff must prove "(1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994) (citing *Smith v. Hartford Ins. Group*, 6 F.3d 131, 137 (3d Cir. 1993)); *accord Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir. 1991). To survive Defendant's Motion to Dismiss, Plaintiff must allege all elements—an obligation Plaintiff has not met.

First, Plaintiff must allege that Defendant made a material misrepresentation. A material misrepresentation exists if "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision." *Rowello v. Healthcare Benefits, Inc.*, 2013 U.S. Dist. LEXIS 175039, *20 (D.N.J. Dec. 13, 2013) (citing *Fischer v. Phila. Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993)).

By Plaintiff's own account, Defendant's only communication with Plaintiff was the issuance of payment. *See* Am. Compl. ¶¶ 9–13. Again, as stated above, "mere silence or inaction cannot give rise to either waiver or estoppel." *Cohen*, 820 F. Supp. 2d at 607. Nonetheless, one could argue that partial payment constitutes a representation that the assignment of benefits was accepted; that position is not persuasive, however, as the Plan itself permits the direct payment of benefits. However, whether payment alone may constitute a material misrepresentation need not be discussed further, as Plaintiff has not alleged either of the remaining two factors.

Regarding the second factor, Plaintiff has not pled any facts that show reasonable or detrimental reliance. Indeed, the sole consequence of the alleged misrepresentation is that Plaintiff "continued to pursue appeals." Pl. Opp. at 12. Assuming that Plaintiff's reliance on the direct payment to mean that Defendant had accepted the assignment of benefits was reasonable, it unclear what injury Defendant has suffered as a result.

Turning to the third factor, the Third Circuit has provided guidance on how to analyze the extraordinary circumstances requirement:

> We have never "clearly defined 'extraordinary circumstances,'" but instead "rely[] on case law to establish its parameters." *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996). For example, we have found extraordinary circumstances where there are "affirmative acts of fraud or similarly inequitable conduct by an employer[,]" or a "network of misrepresentations that arises over an extended course of dealing between parties[,]" and we also consider "the vulnerability of particular plaintiffs." *Id. See also Pell v. E.I. DuPont de Nemours & Co.*, 539 F.3d 292, 304 (3d Cir. 2008) (holding extraordinary circumstances when considering "repeated affirmative misrepresentations, combined with [plaintiff's] diligence" "over an extended course of dealing").
>
> [*Kapp v. Trucking Emps. of N. Jersey Welfare Fund, Inc.*, 426 F. App'x 126, 130 (3d Cir. 2011).]

Moreover, the Third Circuit has held that "'extraordinary circumstances' generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." *Burstein v. Ret. Account Plan For Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 383 (3d Cir. 2003) (internal citation omitted).

Plaintiff has not pled that extraordinary circumstances are present. Indeed, there is nothing in the Complaint, the Proposed Amended Complaint, or Plaintiff's brief that suggests that Defendant acted in bad faith, attempted to actively conceal information, or repeated affirmative misrepresentations over time.

Thus, Plaintiff has not alleged a factual basis to establish any of the three factors required to substantiate estoppel. Rather, Plaintiff's argument is simply another way of "re-arguing that defendants waived the anti-assignment provision by making direct payments to plaintiffs—an argument courts have repeatedly rejected." *MBody*, 2014 U.S. Dist. LEXIS 114012, *8 (S.D.N.Y. Aug. 15, 2014) (citing *Riverview Health Inst. LLC v. Med. Mutual of Ohio*, 601 F.3d 505, 523 (6th Cir. 2010) (holding that payment to a healthcare provider does not create a "viable estoppel claim" when the health insurance plan clearly prohibits assignment)). Therefore, I find that Plaintiff has failed to allege estoppel.

In light of the foregoing, it is clear that Plaintiff lacks standing to pursue an ERISA claim, based on the anti-assignment clause. Accordingly, the Complaint must be dismissed. I therefore need not address the remaining issues raised by Defendant in their Motion.

**Conclusion**

For the reasons expressed herein, Defendant's Motion to Dismiss is granted, and Plaintiff's Complaint is dismissed. Because the proposed Amended Complaint does not alter the result here, Plaintiff's Cross-Motion to Amend is denied. An appropriate Order shall follow.

Date:   July 20, 2015                                              _/s/ Freda L. Wolfson____
                                                                                                      Hon. Freda L. Wolfson
                                                                                                      United States District Judge